**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

SHARONE HUBERT,
    *Plaintiff,*

    v.                         No. 3:19-cv-01323 (VAB)

STATE OF CONNECTICUT
DEPARTMENT OF CORRECTION,
    *Defendant.*

**RULING AND ORDER ON MOTION TO DISMISS**

Sharone Hubert ("Plaintiff") has sued the State of Connecticut Department of Correction

("Defendant" or "DOC") for the third time for work conditions at the Department of Correction.

The Court dismissed both of her earlier cases. In *Hubert, et al. v. Dep't of Corr., et al.*

No. 14-cv-476 (VAB), the Court granted Defendants' motion for summary judgment as to Ms.

Hubert's Title VII claims for sexual harassment, hostile work environment, and retaliation.

Order, *Hubert, et al. v. Dep't of Corr., et al.*, No. 14-cv-476 (VAB), ECF No. 134 (Mar. 30,

2018) ("Order Granting Summ. J. in *Hubert I*"). In *Hubert, et al. v. Dep't of Corr., et al.*, No. 17-

cv-248 (VAB), the Court granted Defendants' motion for summary judgment on the grounds that

Ms. Hubert's hostile work environment claims were time-barred. Order, *Hubert, et al. v. Dep't of*

*Corr., et al.,* No. 17-cv-248 (VAB), ECF No. 77 (Nov. 13, 2019) ("Order Granting Summ. J. in

*Hubert II*").

In this Complaint. Ms. Hubert alleges state law claims for discrimination, retaliation, or

hostile work environment under the Connecticut Fair Employment Practices Act ("CFEPA"),

Conn. Gen. Stat. § 46a-60, and federal claims under Title VII of the Civil Rights Act of 1964 for

sex- and race-based discrimination, hostile work environment, and retaliation. Compl. at 6.

1

The Department of Correction moves to dismiss Ms. Hubert's Complaint for (1) lack of subject matter jurisdiction, (2) failure to exhaust administrative remedies, (3) failure to bring claims within the applicable statutory time period, (4) failure to state a claim upon which relief could be granted, and (5) for making materially false statements under oath in her affidavit in support of her motion for leave to proceed *in forma pauperis* in violation of 28 U.S.C. § 1915(e)(2)(A).

For the following reasons, the motion to dismiss is **GRANTED.**

Ms. Hubert, however, may move for leave to file an amended complaint with a proposed amended complaint attached as an exhibit by **October 2, 2020**, to the extent the deficiencies noted in this ruling can be remedied**.** If Ms. Hubert fails to file a motion seeking to file an amended complaint by **October 2, 2020**, the Court will instruct the Clerk of Court to close this case.

If Ms. Hubert does file a motion seeking to file an amended complaint by this date, the Court will address whether Ms. Hubert made materially false statements under oath in a submission to this Court, and if it is determined that she has, take appropriate action, including but not limited to dismissal of the case with prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Sharone Hubert, an African-American woman, is an employee of the Connecticut Department of Correction. Compl., ECF No. 1 at 1 (Aug. 27, 2019). She alleges that she endured sexual harassment, race- and gender-based discrimination, and workplace retaliation, which allegedly resulted in a hostile work environment. *Id.* at 1–2.

Ms. Hubert allegedly began working at DOC on or about February 13, 1998 as a Correction Officer. *Id.* at 1–2. On or about September 11, 2009, she allegedly was promoted to the position of Lieutenant. *Id.* Ms. Hubert alleges several incidents that occurred after her promotion to Lieutenant, giving rise to her claims:

### 1.   January 27, 2010 Demotion

On January 27, 2010, the Defendant allegedly demoted Ms. Hubert from Lieutenant to her former position as a Correction Officer. *Id.* at 2. Sometime after her demotion, Ms. Hubert allegedly was subject to sexual harassment and employment discrimination when (1) high-ranking officers sexually harassed her by sending pictures of their penises to her cell phone; (2) male co-workers stalked and harassed her; and, (3) male supervisors and administrators subjected her to sexual harassment, embarrassment, and retaliation. *Id.* [1]

### 2.   August 7, 2017 Incident

On or around August 7, 2017, Ms. Hubert's supervisor, Lieutenant Hernandez, allegedly refused to send an inmate to segregation for exposing his penis to her when she was touring the North-1 Unit. *Id.* at 3. Ms. Hubert allegedly filed an incident report that same day describing what had happened. *Id.* at 2. Two or three weeks after the incident, Ms. Hubert's shift commander allegedly called her to see if she would like to mediate the incident with Lieutenant Hernandez and Human Resources. *Id.* at 3. She allegedly agreed to mediate, but never received follow-up communication from Human Resources. *Id.*

### 3.   Incident Regarding the Page 3 Supplemental Report

---

[1] Ms. Hubert's allegations concerning the January 2010 demotion formed the basis of her Title VII claims in *Hubert, et al., v. Dep't of Corr., et al.*, No. 14-cv-476 (VAB) ("*Hubert I*"). As previously mentioned, the Court granted summary judgment in favor of the Defendant as to all of Ms. Hubert's claims in that action. Order Granting Summ. J. in *Hubert I.*

At some unidentified time in the past, Ms. Hubert allegedly received a call from Lieutenant Schwartz requesting that she prepare a "Page 3" or a "supplemental page to another employee's incident report." *Id.* Ms. Hubert allegedly was given dates concerning conduct that "purportedly happened in or around December 2017," but stated to Lieutenant Schwartz that "she had no idea what he was talking about." Lieutenant Schwartz then allegedly hung up the phone *Id.*

Lieutenant Schwartz allegedly called her back immediately and told her to "write what you just said." *Id.* She allegedly told Lieutenant Schwartz that she did not feel comfortable writing the supplemental without speaking to a union steward of her choice. *Id.* Lieutenant Schwartz allegedly told her he was going to have her relieved so that she could "come to the office" to write the Page 3 report. *Id.* She allegedly responded that "she did not feel safe and feared for her safety due to prior incidents that happened in the Lieutenant's office without a witness." *Id.* A Union Representative allegedly called her, but Ms. Hubert told him that she did not feel comfortable with him representing her and she wanted to speak to the Union President. [2] *Id.* at 4.

A few minutes later, Lieutenant Schwartz, Lieutenant Hernandez, and Union Representative Dicarlo allegedly appeared at Ms. Hubert's post and asked whether she was going to write the Page 3 report. *Id.* Lieutenant Hernandez allegedly stated, "He asked you for a supplemental. Are you being insubordinate and not writing the supplemental?" *Id.* Ms. Hubert allegedly stated she was writing the Page 3 supplemental and asked if she needed to turn the light on. *Id.* Lieutenant Hernandez allegedly became hostile and stated, "I don't know what you're writing, and I don't know what you're doing. I'm going to have you relieved from post and

---

[2] Ms. Hubert includes only the last names of both the union representative and president: Union Representative Dicarlo and Union President Demaragge. Compl. at 3–4.

relieved from duty." *Id.* Lieutenant Hernandez allegedly told Ms. Hubert to grab her bags because he was relieving her from her post. *Id.* Ms. Hubert finished writing the Page 3 report and submitted a copy to Officer Bryce. *Id.* at 5.

She allegedly later informed Lieutenant Schwartz that "due to the stress of what just occurred, my period came on." *Id.* She alleges that Lieutenant Schwartz "did not offer her a relief so that she could clean up or go to medical." *Id.*

Ms. Hubert alleges that the sexual harassment, employment discrimination, and retaliation she experienced at DOC is ongoing and continuous and has affected her emotionally, physically, and financially throughout her employment at DOC but especially since January 2010. *Id.* at 2.

### B.  Procedural History

Before filing this lawsuit, Ms. Hubert filed a complaint against DOC with the Connecticut Commission on Human Rights and Opportunities (CHRO) on February 2, 2018. Def.'s Ex. A, ECF No. 19-2 at 1 (Jan. 27, 2020) ("CHRO Compl."). She received a right to sue letter from the CHRO on April 17, 2019. Def.'s Ex. B, ECF No. 19-3 at 1 (Jan. 27, 2020) ("CHRO Right to Sue Letter). Ms. Hubert received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on May 28, 2019. Pl.'s Ex. A, ECF No. 1-1 (Aug. 27, 2019) ("EEOC Right to Sue Letter").

On August 27, 2019, Ms. Hubert filed her Complaint. Compl. She also filed a motion for leave to proceed *in forma pauperis* indicating that she was unable to pay fees and costs associated with commencing her civil action because she was currently not working and was not receiving any income. Mot. for Leave to Proceed *In Forma Pauperis* ("IFP Application"), ECF

No. 2 (Aug. 27, 2019). The Court granted her motion on September 5, 2019. Order, ECF No. 8 (Sep. 5, 2019).

On December 24, 2019, the DOC objected to Ms. Hubert's motion and claimed that she made a materially false representation under oath in her affidavit as to her employment status and whether she was receiving an income. Def.'s Obj. to Pl.'s Mot. for Leave to Proceed *In Forma Pauperis* ("Def.'s Obj."), ECF No. 14 (Dec. 24, 2019).

The DOC included a letter, dated July 22, 2019, from Warden Ned McCormick at Hartford Correctional Center to Ms. Hubert. Ex. B to Def.'s Obj., ECF No. 14-2 (Dec. 24, 2019). Warden McCormick had placed Ms. Hubert on administrative leave with pay effective immediately. *Id.* Her pay checks would be mailed to her home address. *Id.* The DOC also included a State of Connecticut Hours and Earnings Statement for Ms. Hubert showing that she received her first check for paid administrative leave on August 1, 2019. Ex. A to Def.'s Obj., ECF No. 14-1 (Dec. 24, 2019). Lastly, the DOC included a letter dated October 7, 2019 from DOC Human Resources Director Jeffrey Miller to Ms. Hubert informing her that her paid administrative leave would change to unpaid leave.  Ex. C to Def.'s Obj., ECF No 14-3 (Dec. 24, 2019).

On January 27, 2020, the DOC moved to dismiss Ms. Hubert's Complaint for lack of subject matter jurisdiction, failure to exhaust administrative remedies, failure to bring claims within the statutory period, failure to state a claim upon which relief could be granted, and for making materially false statements in her affidavit in support of her motion for leave to proceed *in forma pauperis* in violation of 28 U.S.C. § 1915(e)(2)(A). Def.'s Mot. to Dismiss, ECF No. 19

(Jan. 27, 2020); Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 19-1 (Jan. 27, 2020) ("Def.'s

Mem."). The DOC included a number of exhibits with its supporting memorandum, including:

- Ms. Hubert's CHRO Complaint, CHRO Compl.;

- Ms. Hubert's Release of Jurisdiction Letter from the CHRO, CHRO Right to Sue Letter;

- this Court's ruling on the Defendant's Motion to Dismiss in *Hubert I*, No. 14-cv-00476 (VAB), Def.'s Ex. C, ECF No 19-4 (Jan. 27, 2020);

- this Court's ruling on the Defendant's Motion for Summary Judgment in *Hubert I*, Order Granting Summ. J. in *Hubert I*;

- this Court's ruling on the Defendant's Motion for Summary Judgment in *Hubert II*, Order Granting Summ. J. in *Hubert II*;

- a State of Connecticut Hours and Earnings Statement for Ms. Hubert documenting her earnings from January 2019 through November 2019, Def.'s Ex. F, ECF No. 19-7 (Jan. 27, 2020) ("Hours and Earnings Statement");

- a letter dated July 22, 2019 from Warden Ned McCormick at Hartford Correctional Center to Ms. Hubert stating she was being placed on administrative leave with pay effective immediately and that her checks would be mailed to her home address, Def.'s Ex. G, ECF No. 19-8 (Jan. 27, 2020) ("Letter from Warden McCormick"); and

- a letter dated October 7, 2019 from DOC Human Resources Director Jeffrey Miller to Ms. Hubert informing her that her paid administrative leave would change to unpaid leave, Def.'s Ex. H, ECF No 19-9 (Jan. 27, 2020) ("Letter from HR Director Miller").

On February 24, 2020, the DOC filed a reply noting Ms. Hubert's failure to respond to

the motion to dismiss. Def.'s Reply, ECF No. 23 (Feb. 24, 2020).

On February 28, 2020, Ms. Hubert filed her response to the DOC's motion to dismiss.

Pl.'s Resp. to Mot. to Dismiss, ECF No. 24 (Feb. 28, 2020) ("Pl.'s Resp."). Ms. Hubert did not

respond to the DOC's legal arguments, but instead stated that Conn. Gen. Stat. § 46a-60 and

Title VII prohibit discrimination and sexual harassment and provided additional facts not

included in her Complaint. Pl.'s Resp. at 1–3. Ms. Hubert attached medical records related to a

visit on November 20, 2019 to the University of Connecticut Department of Occupational Health

where she presented complaining of "dizziness, migraines, stomach cramps, numbness, headaches and ongoing rash." Pl.'s Resp. at 6. She also included color photographs that she discussed with the treating physician during that visit. *Id.* at 10–13.[3]

On March 3, 2020, the DOC filed a reply in further support of its motion to dismiss and stated that Ms. Hubert's response to the motion was untimely and that she failed to respond to the DOC's substantive legal arguments. Def.'s Second Reply, ECF No. 25 (Mar. 3, 2020).

## II.   STANDARD OF REVIEW

Defendant moves to dismiss the Complaint under Federal Rule of Procedure 12(b)(1) for lack of subject matter jurisdiction, under Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and under the doctrine of *res judicata.*

### A.   Rule 12(b)(1)—Lack of Subject Matter Jurisdiction

In every case, a court must determine whether it has subject matter jurisdiction. In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A case is properly dismissed under Rule 12(b)(1) where the district court "lacks the statutory or constitutional power to adjudicate the case." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

The burden to prove subject matter jurisdiction generally falls on the plaintiff, but where a "defendant official or government entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit." *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F.

---

[3] The Court cannot discern any relationship between the medical records and Ms. Hubert's response to Defendant's motion.

Supp. 3d 568, 573 (D. Conn. 2016) (internal quotations omitted) (*citing Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006).

### B.  Rule 12(b)(6) —Failure to State a Claim Upon Which Relief Can Be Granted

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101– 02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants). For all litigants, "[t]he failure in a complaint to cite to a statute, or to cite the correct one, in no way affects the merits of the claim." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). "[F]actual allegations alone are what matters." *Id.* "That principle carries particular force where a *pro se* litigant is involved." *Id.*

### C.  Res Judicata

The doctrine of *res judicata* prevents a claim from being relitigated if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (internal quotation marks omitted).

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims because of previous rulings on the merits of those claims. The doctrine of *res judicata*, or claim preclusion, generally dictates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979). The related doctrine of "[c]ollateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a 'full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final

11

judgment on the merits in the first action." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (internal citations and quotations omitted). "The doctrines of *res judicata* and collateral estoppel protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Id.* at 644 (*quoting Parklane Hosiery Co.*, 439 U.S. at 326).

The party asserting the defense of *res judicata* bears the burden of proving that the prior action resulted in a ruling of the claim on its merits, and that res judicata applies to the current case. *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194 (2011); *see Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321–22 (S.D.N.Y.) ("In order to assert an affirmative defense of claim preclusion, a party must show that an earlier decision was: (1) a final judgment on the merits made by a court of competent jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same cause of action.").

## III.   DISCUSSION

Although Ms. Hubert does not cite to any legal authority for her claims in her Complaint, she "request[s] that the Court take [her] complaint of discrimination and retaliation based on [her] protected class status of having opposed what [she] reasonably believed to be employment discrimination, and [her] race, African American, [her] color, Black, and [her] gender, female, and the creation of a hostile work environment, and to secure for [her] the rights guaranteed under the laws of the State of Connecticut, federal anti-discrimination laws, and the Constitution of the United States." Compl. at 6.

Because Ms. Hubert is a *pro se* litigant, the Court will liberally construe her Complaint to raise the strongest possible arguments that it suggests. *See McLeod*, 864 F.3d at 158 (holding that the district court was required to construe plaintiff's complaint as asserting claims under New

York state law regardless of her failure to check the appropriate box on a form complaint provided by district court's *pro se* office).

The DOC  argues that Ms. Hubert's Complaint should be dismissed in its entirety because (1) to the extent Ms. Hubert brings state law claims for discrimination, retaliation, or hostile work environment under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, all such claims must be dismissed as barred by the Eleventh Amendment and sovereign immunity; (2) to the extent Ms. Hubert brings federal claims for discrimination, retaliation, or hostile work environment under Title VII, all such claims must be dismissed because some claims were not exhausted and are now time-barred, some claims are barred by res judicata, and Ms. Hubert failed to state a claim upon which relief may be granted with respect to her discrimination, retaliation, and hostile work environment claims; (3) Ms. Hubert made materially false statements under oath in her *In Forma Pauperis* application, which requires dismissal under 28 U.S.C. § 1915(e)(2)(A); and (4) repleading would be futile because Ms. Hubert cannot cure any of the fatal defects in her pleadings. Def.'s Mem. at 1.

The Court agrees and will first consider her federal claims and then determine whether it is necessary to consider her state law claims. The Court first will consider whether her claims are precluded under *res judicata* and then evaluate whether the Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), before turning to the issue of whether to exercise supplemental jurisdiction over her state law claims.

### A.  Res Judicata

When a party states a credible defense of claim preclusion, a court must determine if it is barred from hearing some or all of the claims, or counts, before it. *Parklane Hosiery Co.*, 439 U.S. at 327 ("[A] judgment on the merits in a prior suit bars a second suit involving the same

parties or their privies based on the same cause of action."). While parties are not entitled to multiple trials against the same parties on the same causes of action once a decision on the merits has been rendered, *res judicata* does not afford parties blanket immunity against suits arising from different and distinct causes of action. The Court must conduct *res judicata* analyses thoughtfully so that it neither subjects movants to improper litigation nor deprives non-movants of access to justice.

The DOC argues that all of Ms. Hubert's sexual harassment claims are barred by *res judicata* because these claims were previously litigated and both cases resulted in a judgment on the merits in its favor. Def.'s Mem. at 11; Order Granting Summ. J. in *Hubert I*; Order Granting Summ. J. in *Hubert II*.

The Court agrees that Ms. Hubert's claims related to her January 27, 2010 demotion are precluded because this Court already issued a decision on the merits of those claims in *Hubert I*,[4] but the claims related to the August 7, 2017 inmate exposure incident and the Page 3 supplemental report that Ms. Hubert submitted at an unidentified time have not yet been litigated and thus are not precluded.

Here, with respect to the January 2010 demotion, Ms. Hubert alleges that DOC officials subjected her to sexual harassment and employment discrimination by sending her pictures of their penises to her cell phone, by stalking and harassing her, and by otherwise "subject[ing] her to sexual harassment, embarrassment, and retaliation." Compl. at 2. Although her allegations

---

[4] This Court previously granted summary judgment to the Defendant in *Hubert I* on Ms. Hubert's Title VII claims for sexual harassment, hostile work environment, and retaliation arising from her January 27, 2010 demotion. Order Granting MSJ in *Hubert I*. Thus, this Court has already issued a final adjudication on the merits as to Ms. Hubert's Title VII claims arising from her January 2010 demotion involving the same parties present in the instant action. *See Soules*, 882 F.3d at 55 (The doctrine of *res judicata* prevents a claim from being relitigated if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.").

lack sufficient detail, they repeat the same claims already dismissed in *Hubert I. See Soules*, 882 F.3d at 55–56 (affirming district court ruling concluding that *res judicata* barred plaintiff's claims for retaliation and wrongful discharge where plaintiff was effectively allowed to amend his complaint, which would have incorporated the claim plaintiff tried to bring in the second lawsuit).).

    For these reasons, the Court will dismiss all of Ms. Hubert's Title VII claims for sexual discrimination, retaliation, and hostile work environment arising from her January 27, 2010 demotion. The Court now will consider Ms. Hubert's remaining discrimination, retaliation, and hostile work environment claims.

### B.  12(b)(6) and Title VII Claims

    Ms. Hubert's remaining federal claims relate to two separate incidents: (1) the August 7, 2017 inmate exposure incident and Ms. Hubert's incident report explaining Lieutenant Hernandez's actions in response, and (2) the exchange between Ms. Hubert, Lieutenant Hernandez, and Lieutenant Schwartz during which she prepared a Page 3 supplemental report related to a different employee's incident report involving conduct allegedly occurring in December 2017. Ms. Hubert asserts discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 related to these two incidents. 42 U.S.C. § 2000e, *et seq*.

    The DOC  argues that these claims are either time barred or fail to state a claim upon which relief may be granted. Def.'s Mem. at 9.

    The Court disagrees that these claims are time barred, but agrees that Ms. Hubert has failed to state a claim upon which relief may be granted.

### 1. Time-Barred Claims

Under Section 2000e–5(e)(1), a Title VII plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002).

If a plaintiff initially files a grievance with a state entity, such as the CHRO, that has the authority to grant or seek relief with respect to the alleged unlawful practice, a plaintiff must file a charge with the EEOC within 300 days of the alleged unlawful practice. 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015); *Briscoe v. City of New Haven*, 967 F. Supp. 2d 563, 577 (D. Conn. 2013). "A claim is time barred if it is not filed within these limits." *Richardson v. Hartford Pub. Library*, 404 F. App'x 516, 517 (2d Cir. 2010) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109)).

Under Section 46a-82(f) of the Connecticut General Statutes, the CHRO requires that a plaintiff file a complaint within 180 days of the alleged act of discrimination. Conn. Gen. Stat. § 46a-82(f). A plaintiff who fails to file a timely charge, however, is not precluded from taking advantage of the extended 300-day federal filing period. *Richardson*, F. App'x at 518 (citing *EEOC v. Com. Office Products Co.*, 486 U.S. 107, 123 (1988)).[5]

---

[5] Connecticut is known as a "deferral state" or "one which has its own antidiscrimination laws and administrative agency." *Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 340 (D. Conn. 2014). "In a deferral state, a complaint must first be filed with the state agency to give it an opportunity to resolve the suit." *Id.* "In the initial sixty-day period the state agency has exclusive jurisdiction to process discrimination charges." *Id.* "The state agency retains exclusive jurisdiction unless one of three events occur to trigger EEOC jurisdiction: (1) the sixty-day deferral period expires; (2) the state agency proceedings are 'terminated'; or (3) the state agency waives its right to exclusively process the charge." *Id.* "The EEOC does not have subject matter jurisdiction to proceed with its investigation and to issue a right to sue letter until the deferral period expires or the state agency proceedings are otherwise terminated." *Id.*

The DOC states that Ms. Hubert filed her CHRO Complaint on February 2, 2019. Def.'s Mem. at 10. But, according to the copy of Ms. Hubert's CHRO Complaint attached to Defendant's own memorandum, the correct filing date is February 2, 2018. CHRO Compl. at 1, 8. The 180-day and the extended 300-day filing periods begin on the date of the alleged unlawful employment practice, not on the date the plaintiff files a charge with a state agency or with the EEOC. *See* 42 U. S. C. § 2000e–5(e)(1) ("A charge under this section shall be filed within [180 or 300] days after the alleged unlawful employment practice occurred . . . ."); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109 (employee must file charge with EEOC within 180 days of alleged unlawful employment practice or within 300 days if employee files with a State entity with the authority to grant or seek relief with respect to the alleged unlawful practice).

Ms. Hubert alleges that she experienced employment discrimination on August 7, 2017, when her supervisor, Lieutenant Hernandez, refused to send an inmate to segregation for exposing his penis to her when she was touring the North-1 Unit. Compl. at 3. Thus, Ms. Hubert had 180 days from August 7, 2017 to file a charge with the CHRO and 300 days from that same date to file a charge with the EEOC, making her respective deadlines February 3, 2018 and June 3, 2018. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109 ("Section 2000e–5(e)(1) requires that a Title VII plaintiff file a charge with the [EEOC] either 180 or 300 days after the alleged unlawful employment practice occurred." (internal quotation marks omitted)). Ms. Hubert filed a charge with the CHRO on February 2, 2018, within both the state and federal deadlines. CHRO Compl. at 1.

Accordingly, Ms. Hubert's claims arising from the August 7, 2017 incident were timely filed.

Ms. Hubert has failed to allege a date on which an unlawful employment practice occurred with respect to her claim regarding the Page 3 supplemental report she prepared in connection with another employee's incident report. Without a date of the alleged unlawful employment practice, the Court cannot determine whether the claim is timely or not. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 109–10 (explaining that a charge under Title VII must be filed within 180 or 300 days after the alleged unlawful employment practice occurred, indicating that the timeliness of a Title VII charge cannot be determined without the date of such alleged unlawful practice). In the absence of this important information, the Court will dismiss this claim because of its failure to allege a plausible entitlement to relief. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal citations omitted) (quoting *Twombley*, 550 U.S. at 557)).

The Court now will turn to Ms. Hubert's *prima facie* case for her claims of discrimination, retaliation, and hostile work environment arising from the August 7, 2017 incident.

### 2. Discrimination Claims

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting framework to evaluate claims of employment discrimination and outlined the elements of a prima facie case. Consistent with this decision, in the Second Circuit, a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citation omitted). A plaintiff's burden for

18

establishing a prima facie case is *de minimis*. *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as 'minimal' and '*de minimis*.'" (citing *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).

At the pleading stage of a suit involving employment discrimination, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices . . . because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); *see also  Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember th[e] exceedingly low burden that discrimination plaintiffs face. . . .").

For a Title VII discrimination claim to survive a motion to dismiss, the complaint must plausibly state (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position, (3) that the plaintiff suffered an adverse employment action, and (4) that at least minimal support exists for the proposition that the employer was motivated by discriminatory intent. *Littlejohn v. City of N. Y.*, 795 F.3d 297, 307 (2d Cir. 2015). The allegations need not, however, give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id.* ("[T]he Supreme Court ruled [in *McDonnell Douglas*] that, in the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation.").

 "[A] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "An adverse employment

action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*; *see also Jaeger v. N. Babylon Union Free Sch. District*, 191 F. Supp. 3d 215, 227 (E.D.N.Y. 2016) ("Rather, for a challenged employment action to be deemed 'adverse' under the law, it must objectively alter for the worse the terms and conditions of a plaintiff's employment.").

In addition to alleging that she is an African American woman, Ms. Hubert's discrimination claim is premised on the following allegations: Lieutenant Hernandez' failure to send an inmate to segregation for exposing his penis to her when she was touring the North-1 Unit, Compl. at 3.

Ms. Hubert has alleged the first element of a *prima facie* case—she is a member of protected class. But she fails to establish the remaining elements. *See Littlejohn*, 795 F.3d at 307 (holding a plaintiff must allege that she is qualified for the position and suffered an adverse employment action, and must provide minimal support for the proposition that the employer was motivated by discriminatory intent). Specifically, Ms. Hubert has not alleged "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," or any other facts that indicate an adverse employment action. *See Vega*, 801 F.3d at 85 (quoting *Terry*, 336 F.3d at 138); *see also Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 720–21 (E.D.N.Y. 2015) (dismissing claim where supervisors comments about age and gender were "insufficient to establish an adverse employment action for purposes of an ADEA or Title VII claim" and

plaintiff failed to allege a "demotion, reduction of pay, or reduction of job responsibilities because she was an older woman"); *Henry v. N.Y. City Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404–05 (S.D.N.Y. 2014) (African American female police officer's allegation against city employer defendants that being removed from role call and sent home on one occasion, without additional allegations that she was docked pay on that day or further disciplined as a result, did not amount to an adverse employment action); *Gutierrez v. City of N. Y.*, 756 F. Supp. 2d 491, 508–09 (S.D.N.Y. 2010) (Hispanic-American detectives' allegations that employer refused to grant days off, required that detectives adhere more strictly to dress code than white detectives, and "checked up" on detectives did not amount to adverse employment actions without further allegation that actions had an "attendant negative result" on the terms and conditions of employment); *Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (plaintiff sufficiently pled discrimination where she alleged "being passed over for promotions and deprived of necessary training due to her religion, national origin and race . . . .[,] no other employee at [defendant company] of the same religion, race, or national origin[,] [ ] that less-qualified and employees with less seniority were promoted over her[,] . . . [and] the plaintiff identified some relevant dates in her complaint."). In the absence of plausible allegations of an adverse employment action, Ms. Hubert has no viable claim and the Court therefore need not determine whether discriminatory intent may be inferred. Accordingly, Ms. Hubert has failed to state a cognizable claim of employment discrimination.

### 3.  Retaliation Claims

To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. "The

Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "The scope of actions that may be materially adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by Title VII's anti-discrimination provisions; the latter apply to the terms and conditions of employment, while the former 'anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 224–25 (E.D.N.Y. 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotations marks omitted)).

Ms. Hubert's retaliation claim is premised on her filing of an incident report on or around August 7, 2017, reporting her supervisor's failure to send an inmate to segregation after the inmate exposed his penis to her along with a reference to the fact that her shift commander never facilitated a mediation for that incident, Compl. at 2–3; and, her filing of a complaint with the CHRO on February 2, 2018, CHRO Compl. at 1.

While Ms. Hubert's filing of a complaint with the CHRO on February 2, 2018 constitutes a protected activity, she does not allege that she experienced a materially adverse employment action in response that would have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination[,]" following the submission of her complaint. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57; *see also Jaeger*, 191 F. Supp. 3d at 233 (dismissing a retaliation claim where plaintiff alleged no retaliatory actions following the filing of his EEOC charge)[6]

---

[6] Even though the Court will not consider any of the allegations regarding Ms. Hubert having to file a supplemental report, and will dismiss any claim arising out of these allegations for failure to state a claim consistent with the Supreme Court's decisions in *Iqbal* and *Twombley*, these allegations would not result in a viable claim for other reasons. Ms. Hubert was asked to write a supplemental report related to another employee's incident report, not her

Ms. Hubert fails to allege a later adverse employment action and "[s]imply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss." *Dechberry v. N.Y. City Fire Dep't*, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015). Moreover, Ms. Hubert not only fails to allege an adverse employment action, but also fails to allege a causal connection between that action and any complaint of hers of a discriminatory employment practice.

Accordingly, Ms. Hubert has failed to state a cognizable claim for retaliation.

### 4. Hostile Work Environment Claims

In order to state an actionable hostile work environment claim under Title VII, a plaintiff must allege that he or she was subjected to harassment that was severe or pervasive enough "to alter the conditions of the victim's employment and create an abusive working environment, and . . . that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citations omitted). The plaintiff must demonstrate that the workplace atmosphere was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 & 67 (1986)).

---

own. Making "[a]n internal complaint of discrimination to management is a protected activity for purposes of a retaliation claim under Title VII[,]" *Gad-Tadros*, 326 F. Supp. 2d at 424, but writing incident reports or being requested to write a supplemental incident report is a normal policy or practice that hardly rises to the level of a materially adverse employment action. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2014) (allegations that an employee received two disciplinary citations for insubordination over two-year period, was assigned to drive dirty buses, received one late overtime payment, and endured employer's one-time refusal to give him a half-day off for doctor's appointment did not constitute materially adverse employment action); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) ("Actions that are trivial harms—*i.e.*, those petty slights or minor annoyances that often take place at work and that all employees experience—are not materially adverse." (internal quotation marks omitted) (quoting *Burlington*, 548 U.S. at 68)).

"Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). These circumstances include factors such as the frequency of the discriminatory conduct; the severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating (as opposed to merely offensive); and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. These factors are to be evaluated holistically, and no single one is required. *Id.*; *see also Littlejohn*, 795 F.3d at 321 ("In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it is unreasonably interferes with an employee's work performance.'" (quoting *Harris*, 510 U.S. at 23))

The test for sufficiency of a hostile work environment claim has both subjective and objective prongs: the plaintiff subjectively must perceive the environment to be abusive, and the discriminatory conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would [not] find hostile or abusive— is beyond Title VII's purview." Harris, 510 U.S. at 21. "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Alfano*, 294 F.3d at 374).

Ms. Hubert bases her hostile work environment claim on the lack of discipline by Lieutenant Hernandez following the exposure incident, Compl. at 3; and Ms. Hubert's shift commander's follow-up with her two or three weeks after the incident, to see if she would like to

mediate the incident with Lieutenant Hernandez and Human Resources, to which Ms. Hubert agreed, but she never received follow-up communication, Compl. at 2. Ms. Hubert states in conclusory terms that these events amount to a sex- and race-based hostile work environment. Compl. at 6.

These allegations, if reasonably substantiated, could evidence a hostile work environment claim. But without more detail, her allegations fail to state a plausible claim of a hostile work environment.' *Harris*, 510 U.S. at 21 ("When a workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." (citing *Meritor Sav. Bank, FSB*, 477 U.S. at 67); *see, e.g., Duplan v. City of N.Y.*, 888 F.3d 612, 627 (2d Cir. 2018) (affirming dismissal where plaintiff failed to demonstrate that "the environment was objectively hostile and abusive" as plaintiff alleged only derogatory comments by a supervisor); *Fleming v. MaxMara USA Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that excluding the plaintiff from meetings, excessively criticizing her work, refusing to answer work-related questions, arbitrarily imposing duties beyond her responsibilities, throwing books, and sending rude e-mails to her did not amount to a hostile work environment); *Alfano*, 294 F.3d at 376–77 (holding that female corrections officer's allegations that her supervisor made it more difficult for her to do her job by requiring her to fill out paperwork for maintenance which other male officers were not required to do, that her supervisor failed to eject prison visitor who made obscene gesture at her, and that her supervisor rated her "good" rather than "excellent" on two performance evaluations did not meet the threshold of severity or pervasiveness for sex-based hostile work environment). She fails to "allege or set forth any facts that [D]efendant's acts or conduct 'affected the terms

and conditions of [her] employment'—an essential element of a hostile work environment claim." *Dechberry*, 124 F. Supp. 3d at 158.

Although Ms. Hubert's allegation that Lieutenant Hernandez failed to discipline an inmate for exposing his penis to her could reasonably suggest hostile behavior on the part of Lieutenant Hernandez, Ms. Hubert does not claim that this was unusual or intended to undermine or embarrass her. *See* Compl. at 2–3; *see also Alfano*, 294 F.3d at 376 (holding that defendant lieutenant's decision to issue a warning to visitor who made obscene gesture at plaintiff instead of ordering visitor removed from prison did not form basis of hostile work environment claim because there was no evidence to indicate that lieutenant's warning "was intended to undermine [plaintiff], that it was unreasonably indulgent . . . or that it deviated from ordinary practice).

Ms. Hubert also fails to allege a causal connection between the failure to discipline an inmate and mistreatment because of her sex or race. *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) ("Thus, although [plaintiff's] work environment may have been unpleasant—even 'hostile' in ordinary parlance—his discrimination claim must be dismissed because the circumstances do not permit an inference that '[ ]he was singled out for mistreatment because of [his] sex.'" (alterations in the original) (quoting *Alfano*, 294 F.3d at 275); *Bliss v. MXK Restaurant Corp.*, 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) ("Bliss cannot simply allege a series of offensive racist and homophonic comments by her supervisor, point out that she is a woman, and thereby state a claim for gender discrimination.") .

Likewise, Ms. Hubert does not allege that Human Resources' failure to follow up with her about mediating the incident was against protocol, out of the ordinary, or intended to punish or embarrass her.

Accordingly, Ms. Hubert has failed to state a cognizable claim for race- or sex-based hostile work environment.

Because the Court has dismissed all of Ms. Hubert's federal claims, it need not exercise supplemental jurisdiction over her state law claims.

### C. The CFEPA Claims

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at

122; *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'") (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon*, 484 U.S. 343, 350 (1988)); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.")

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. The Court finds that principles of comity suggest that Connecticut courts are more suited to determine the viability of Ms. Hubert's CFEPA claims, which involve Connecticut law. Her "claims may be vindicated, if at all, in state court under traditional state law principles."

*Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).[7]

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss Ms. Hubert's CFEPA claims without prejudice as a result.

### D.  Plaintiff's Materially False Statements Under Oath in Her *In Forma Pauperis* Application

As the Court has already dismissed all of Ms. Hubert's claims, it need not consider, at this time, whether Ms. Hubert made materially false statements under oath and whether that warrants dismissal on those grounds.

### E.  Leave to Replead

When faced with a *pro se* plaintiff, a court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 6998, 705 (2d Cir. 1991)). Under Rule 15, courts are instructed to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (19662) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." (citation omitted)).

Although Ms. Hubert's Complaint is deficient in numerous respects, as noted above, the Court will grant her limited leave to file an amended complaint. Because of the application of the the doctrine of *res judicata* to any claims arising out of her January 27, 2010 demotion, it would be futile to permit any of these claims to be the subject of an amended pleading. *See Williams v.*

---

[7] Because the Court has declined to exercise supplemental jurisdiction over Ms. Hubert's CFEPA claims, the Court will not conduct analysis under Federal Rule of Procedure 12(b)(1) for lack of subject matter jurisdiction.

*Citigroup*, 659 F.3d 208, 214 (2d Cir. 2011) ("It is well established "[l]eave to amend need not be granted ... where the proposed amendment would be 'futil[e].'" (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (second alteration in the original)).

Similarly, even if this Court could have exercised supplemental jurisdiction over Ms. Hubert's CFEPA claims, those claims would still be barred by Eleventh Amendment immunity. "The Eleventh Amendment to the United States Constitution bars a suit in federal court against a state or one of its agencies for either legal or equitable relief unless the state explicitly consents to suit or Congress explicitly abrogated state immunity." *Garris v. Dep't of Corr.*, 170 F. Supp. 2d 182, 186 (D. Conn. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984)). "The DOC is a state agency entitled to the protection of the Eleventh Amendment." *Garris*, 170 F. Supp. at 186; *see also Santiago v. N. Y. State Dep't of Corr. Servs.*, 945 F.3d 25, 28 n.1 (2d Cir. 1991) ("Agencies of the state, such as [DOC], are entitled to assert the state's Eleventh Amendment immunity where . . . the agency is the alter ego of the state and the state is the real party in interest.").

The State of Connecticut has expressly waived immunity from suit for claims brought under CFEPA in Connecticut state courts. Conn. Gen. Stat. § 46a-100. Connecticut's General Statutes, however, contain nothing that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims in federal court. *See Lyon v. Jones*, 168 F. Supp. 2d 1, 6 (D. Conn. 2001) (holding that Connecticut has waived common law immunity from suit in state court but has not waived immunity from suit in federal court under Eleventh Amendment). Thus, "absent an unequivocal expression or clear declaration of consent to defend CFEPA suits in federal

court, the court may not find such a waiver of Eleventh Amendment immunity." *Garris*, 170 F. Supp. 2d at 187.

Accordingly, Ms. Hubert's CFEPA claims would have to be dismissed and it would be futile for those claims to be the basis of an amended complaint.

Aside from these two fatal legal deficiencies in her current Complaint, Ms. Hubert may file a motion seeking leave to file an amended complaint with any such proposed amended complaint attached as an exhibit by **October 2, 2020**, to the extent that the deficiencies noted in this ruling can be remedied. If Ms. Hubert fails to file a motion seeking to file an amended complaint by **October 2, 2020**, the Court will instruct the Clerk of Court to close this case.

If Ms. Hubert does file a motion seeking to file an amended complaint by this date, the Court will address whether Ms. Hubert made materially false statements under oath in a submission to this Court, and if it is determined that she has, take appropriate action, including but not limited to dismissal of the case. *See Vann v. Commissioner of N.Y. City Dept. of Correction*, 496 F. App'x 113, 116 (2d Cir. 2012) ("Given the falsity of Vann's application and his declarations, Vann's bad faith in this case evidence by his litigation experience and extensive familiarity of the *in forma pauperis* process, and Vann's failure to credibly explain or correct his declarations when given an opportunity to do so, the District Court was well within its discretion when it dismissed Vann's complaint with prejudice."); *Cuoco v. U.S. Bureau of Prisons*, 328 F.Supp.2d 463, 468 (S.D.N.Y. 2004) ("Dismissal with prejudice is appropriate when an applicant misrepresents her financial arrangements in bad faith to obtain IFP status.").

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

Ms. Hubert, however, may move for leave to file an amended complaint with a proposed amended complaint attached as an exhibit by **October 2, 2020**, to the extent the deficiencies noted in this ruling can be remedied**.** If Ms. Hubert fails to file a motion seeking to file an amended complaint by **October 2, 2020**, the Court will instruct the Clerk of Court to close this case.

If Ms. Hubert does file a motion seeking to file an amended complaint by this date, the Court will address whether Ms. Hubert made materially false statements under oath in a submission to this Court, and if it is determined that she has, take appropriate action, including but not limited to dismissal of the case with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of August, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE